**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
David J. McGlothlin, Esq. (SBN: 253265)
david@kazlg.com
Ross Schmierer, Esq. (*Pro Hac Vice will be filed*)
ross@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiffs*
Farbod Hadizadeh Moghadam
and Nigel Lucombe

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FARBOD HADIZADEH MOGHADAM AND NIGEL LUCOMBE, individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> VS. <br><br> ALLEVIATE TAX LLC., <br><br> Defendant. | **CASE NO.:** <br><br> **CLASS ACTION COMPLAINT** <br><br> 1. **VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C §§ 227, ET SEQ. (TCPA);** <br> 2. **VIOLATIONS OF THE CALIFORNIA INVASION OF PRIVACY ACT, CAL. PEN. CODE § 632, ET SEQ. (CIPA); AND** <br> 3. **VIOLATIONS OF THE FLORIDA TELEPHONE SOLICITATION ACT, § 501.059 (FTSA)** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs HARBOD HADIZADEH MOGHADAM ("Plaintiff Moghadam") and NIGEL LUCOMBE ("Plaintiff Lucombe") (collectively referred to as "Plaintiffs"), individually and on behalf of all others similarly situated, bring this Class Action Complaint against Defendant ALLEVIATE TAX, LLC ("Defendant") for its violations of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*., ("TCPA"), THE California Invasion of Privacy Act Cal. Pen. Code § 632 ("CIPA") and the Florida Telephone Solicitation Act, § 501.059 ("FTSA").

## INTRODUCTION

1.    Plaintiffs bring this Class Action Complaint for damages, injunctive relief, and all other available legal or equitable remedies, challenging Defendant's unlawful actions in negligently and/or willfully contacting Plaintiffs and the members of the proposed Class (as defined below) (collectively, the "Class Members") on their cellular telephones, thereby invading Plaintiffs' privacy.

2.    This case is brought to enforce the consumer privacy provisions afforded by the TCPA, a federal law that was designed to curtail abusive telemarketing practices precisely like those described herein.

3.    Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by bombarding consumers' cellular telephones with non-emergency communications and telemarketing phone calls without prior express written consent.

4.    The TCPA was enacted to protect consumers from unsolicited and unwanted telephone calls exactly like those alleged in this case.

5. Plaintiffs seek an injunction requiring Defendant to cease all unsolicited pre-recorded voice messages to non-consenting consumers, as well as an award of statutory damages and treble damages (for knowing and/or willful violations) for Plaintiffs and each of the Class Members, per violation, together with court costs, and reasonable attorneys' fees.

6. Defendant also violated Cal. Pen. Code § 632.7(a) by intentionally recording confidential telephonic communications between itself and Plaintiff Moghadam without his consent.

7. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

8. Unless otherwise stated, Plaintiffs allege that any violations by Defendant were knowing and intentional, and that Defendant did not maintain procedures reasonably adapted to avoid any such violations.

9. Unless otherwise indicated, the use of any Defendant's name in this Complaint includes all agents, employees, vendors, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

## JURISDICTION AND VENUE

10. This Court has federal question subject matter jurisdiction over this class action lawsuit pursuant to 28 U.S.C. § 1331 as Plaintiffs allege violations of a federal statute, the TCPA.

CLASS ACTION COMPLAINT

11.     The Court has supplemental subject matter jurisdiction over the additional claims in this suit, violations of the CIPA and the FTSA, because these claims are substantially related to and arises out of the same controversy as the original claim. 28 U.S.C. § 1367.

12.     Personal jurisdiction is established because Defendant conducts business in the State of California. At all times relevant herein, Defendant conducted business in the State of California, and within this judicial district.

13.     Personal jurisdiction and venue are proper in the Central District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (1) the conduct complained of herein occurred from this judicial district; and (2) Defendant conducted business within this judicial district at all times relevant.

14.     Venue is proper in the United States District Court for the Central District of California pursuant to 18 U.S.C. § 1391 because the conduct complained of herein occurred within this judicial district and many of the acts and transactions giving rise to this action occurred in this district because:

a)  Defendant is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district;

b)  Defendant does substantial business within this district;

c)  Defendant is subject to personal jurisdiction in this judicial district because Defendant has availed itself of the laws and markets within this district; and,

CLASS ACTION COMPLAINT

d) the harm to Plaintiffs originated from within this judicial district.

## **PARTIES**

15.    Plaintiff Moghadam is, and at all times mentioned herein was, a resident of the State of New Jersey, County of Essex. Plaintiff Moghadam is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

16.    Plaintiff Lucombe is, and at all times mentioned herein was, a resident of the State of Florida, County of Pasco. Plaintiff Lucombe is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

17.    Defendant is a limited-liability company formed under the laws of the State of California, with its principal address at 2600 Michelson Drive, Suite 700, Irvine, California 92612. Defendant is, and at all times mentioned herein was, a company and a "person," as defined by 47 U.S.C. § 153(39).

18.    Defendant is a company engaged in retail, and at all times relevant hereto a "telephone solicitor" as defined by Fla. Stat. § 501.059(f).

19.    At all times relevant, Defendant conducted business in the State of California and within this judicial district.

## **TCPA BACKGROUND**

20.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy.…"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. §

CLASS ACTION COMPLAINT

227).

21.    The TCPA was designed to prevent calls and messages like the one described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

22.    The TCPA restricts telephone solicitations (*i.e.,* telemarketing), as well as violations of the TCPA's Do-Not-Call provision of 47 C.F.R. § 64.1200(c).

23.    In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243, § 11. Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

CLASS ACTION COMPLAINT

24.     As Judge Easterbrook of the Seventh Circuit explained in a TCPA case:

> The Telephone Consumer Protection Act […] is well known for its provisions limiting junk-fax transmissions. A less litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered – and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

25.     In addition, 47 C.F.R. § 64.1200(a)(2) states, with respect to advertisement and telemarketing calls—of which Defendant calls to Plaintiff are—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . . ."

26.     47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

CLASS ACTION COMPLAINT

27.    As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>,[1] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibit solicitations to residences that use an artificial voice or a recording.

- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibit autodialed calls that engage two or more lines of a multi-line business.

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

8

- Prohibit unsolicited advertising faxes.

28.    Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012).  Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

29.    With respect to misdialed or wrong-number calls, the FCC recently clarified that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015).  "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id.*  Thus, any second call placed to a wrong number violates the TCPA.

30.     The TCPA provides for damages in the amount of $500 for each negligent violation and treble damages of $1,500 for each knowing or willful violation. *See* 47 U.S.C. § 227(b)(3).

## CIPA BACKGROUND

31.     The California Invasion of Privacy Act (CIPA), enacted in 1994, aims to protect against wiretapping and eavesdropping. Originally focused on safe harboring California landlines, CIPA has adapted to cover modern communications, extending to cell phones and online interactions.

32.     Under CIPA, Cal. Pen. Code § 632.7 deems it unlawful to, "…without the consent of the parties to a communication, intercepts or receives and intentionally records or assists in the interception or… international recordation of, a communication transmitted between two [phones]."

33.     Defendant is, and at all times mentioned herein was, a "person," as defined by Cal. Pen. Code § 637.2(b).

34.     Defendant's phone calls with each Plaintiff constitute "confidential communication" per Cal. Pen. Code § 637.2(c).

35.     The California Supreme Court affirmed it is illegal to record a party to a phone call without obtaining consent from all participants. *Smith v. LoanMe, Inc.,* 11 Cal.5th 183 (2021).

36.     The CIPA provides for damages in the amount of $5,000 per violation in addition to any actual damages. Cal. Pen. Code § 637.2(a).

## FTSA BACKGROUND

37.    It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number without the prior express written consent of the called party." Fla. Stat **§ 501.059(8)(A).**

38.    The statute defines "telephonic sales call" as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. **§ 501.059(1)(I).**

39.    A person will be defined as a "called party" if they are a "person who is the regular user of the telephone number that receives a telephonic sales call," under Fla. Stat. **§ 501.059(1)(A).**

40.    An "unsolicited telephonic sales call" is one that is made other than in direct response to the express request of the person who is called. under Fla. Stat. **§ 501.059(4)(K).**

## FACTUAL ALLEGATIONS

41.    Defendant is a for-profit corporation that sells debt consolidation services targeting individuals encumbered with debts owed to the Internal Revenue Service.

CLASS ACTION COMPLAINT

42.    In Defendant's overzealous attempt to market its services, Defendant willfully or knowingly conducted (and continues to conduct) unsolicited and prerecorded telemarketing phone calls without the prior express written consent of the Plaintiff and the Class Members who were recipients of such telephone calls.

43.    Through this conduct, Defendant has violated the TCPA and invaded the privacy of Plaintiff and the members of the Class.

**Defendant Moghadam**

44.    At all times relevant, Plaintiff Moghadam was a citizen of the State of New Jersey.  Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39) and Cal. Pen. Code § 637.2(b).

45.    Defendant is, and at all times mentioned herein was, a company and a "person," as defined by 47 U.S.C. § 153(39) and Cal. Pen. Code § 637.2(b). Upon information and belief, Defendant made numerous unsolicited telephone calls, including calls utilizing an artificial or pre-recorded voice message, to Plaintiff and the Class members.

46.    At all relevant times, Plaintiff was assigned, and was the owner of, a cellular telephone number of ending in 2246 ("Plaintiff Moghadam's Cell Phone"). Plaintiff Moghadam is the sole user and/or subscriber of his Cell Phone.

47.    Plaintiff Moghadam's Cell Phone has been registered to the National Do Not Call Registry since February 20, 2020.

CLASS ACTION COMPLAINT

48.     Defendant is required to check the National Do Not Call Registry before attempting to call. 47 U.S.C. § 227(c)(3)(F).

49.     On or around July 5, 2023, an "Unknown" number placed an autodialed call to Plaintiff Moghadam's Cell Phone. Plaintiff Moghadam answered and was met with a representative named Josh, who introduced himself on behalf of Defendant. Plaintiff Moghadam was deeply inconvenienced by the call and engaged with Josh to determine the source of the call. Josh inquired about Plaintiff Moghadam's tax debt and attempted to sell him on Defendant's relief program. Unbeknownst to Plaintiff Moghadam, Defendant recorded and saved this phone call.

50.     On or around August 17, 2023, Plaintiff Moghadam received another call from an unidentifiable number. Plaintiff Moghadam answered and was met with another representative of Defendant by the name of John Tran. Plaintiff Moghadam again inquired about the source of the call. Again, Mr. Tran was promoting Defendant's program, attempting to get Plaintiff Moghadam to sign up. Unbeknownst to Plaintiff Moghadam, Defendant also recorded and saved this phone call.

51.     Subsequently, from August 17, 2023, to September 11, 2023, Mr. Tran, acting on behalf of Defendant, made eight additional calls to Plaintiff Moghadam's cell phone from the number 949-229-4938.

52.     In addition to the calls, Plaintiff Moghadam's cell phone also received nine solicitation text messages from Mr. Tran promoting Defendant's program, all from the same phone number ending in 4938. In these texts, Mr. Tran identified himself on

behalf of Defendant, stating, "Hey Farbod, it's John from Alleviate Tax…" and "Hey Farbod, it's John w/ Alleviate Tax..."

53.     Plaintiff Moghadam did not provide Defendant with his cellular telephone number at any point in time.

54.     Plaintiff Moghadam did not have an established business relationship with Defendant during the time of the telephone solicitations from Defendant.

55.     Plaintiff Moghadam did not have a personal relationship with Defendant at any point in time.

56.     Plaintiff Moghadam did not give Defendant prior express invitation or consent in writing for Defendant to call or text Plaintiff Moghadam's cellular telephone for marketing or solicitation purposes.

57.     Plaintiff Moghadam did not give Defendant prior express consent to record their private, confidential communications. Plaintiff Moghadam was never made aware the phone calls were recorded or stored.

**Plaintiff Lucombe**

58.     At all times relevant, Plaintiff Lucombe was a citizen of the State of Florida.  Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

59.     Defendant is, and at all times mentioned herein was, a company and a "person," as defined by 47 U.S.C. § 153(39). Upon information and belief, Defendant made numerous unsolicited telephone calls, including calls utilizing an artificial or pre-

recorded voice message, to Plaintiff and the Class members.

60.    At all relevant times, Plaintiff was assigned, and was the owner of, a cellular telephone number of ending in 7705 ("Plaintiff Lucombe's Cell Phone"). Plaintiff Lucombe is the sole user and/or subscriber of his Cell Phone.

61.    Plaintiff Lucombe's Cell Phone has been registered to the Nation Do Not Call Registry since November 12, 2019.

62.    Defendant is required to check the National Do Not Call Registry before attempting to call. 47 U.S.C. § 227(c)(3)(F).

63.    In or around 2024, Plaintiff Lucombe received a call from 291-703-2000. The agent on the prerecorded voicemail solicited tax relief services. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. The robotic nature of the recording and vague language suggests that Defendant and/or Defendant's agent used an automated system for the selection or dialing of telephone numbers as referred to by Fla. Stat § 501.059(8)(A).

64.    On or around March 22, 2024, Plaintiff Lucombe received a call from 291-648-4256. The prerecorded voicemail failed to operate properly, omitting callback information. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. The robotic nature of the recording and vague language suggests that Defendant and/or Defendant's agent used an automated system for the selection or dialing of telephone numbers as referred to by Fla. Stat § 501.059(8)(A).

CLASS ACTION COMPLAINT

65.    On or around April 9, 2024, Plaintiff Lucombe received a call from 291-797-7152. The agent on the prerecorded voicemail solicited tax relief services. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. The robotic nature of the recording and vague language suggests that Defendant and/or Defendant's agent used an automated system for the selection or dialing of telephone numbers as referred to by Fla. Stat § 501.059(8)(A).

66.    On or around April 11, 2024, Plaintiff Lucombe received a call from 291-715-1392. The agent on the prerecorded voicemail solicited tax relief services. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. The robotic nature of the recording and vague language suggests that Defendant and/or Defendant's agent used an automated system for the selection or dialing of telephone numbers as referred to by Fla. Stat § 501.059(8)(A).

67.    In or around 2024, Plaintiff Lucombe received a call from 291-669-3248. The agent on the prerecorded voicemail solicited tax relief services. Upon information and belief, this number belongs to Defendant and/or Defendant's agent. The robotic nature of the recording and vague language suggests that Defendant and/or Defendant's agent used an automated system for the selection or dialing of telephone numbers as referred to by Fla. Stat § 501.059(8)(A).

68.    On or around June 13, 2024, Plaintiff Lucombe received a call from 291-646-0672. The agent on the prerecorded voicemail solicited tax relief services. Upon information and belief, this number belongs to Defendant and/or Defendant's agent.

The robotic nature of the recording and vague language suggests that Defendant and/or Defendant's agent used an automated system for the selection or dialing of telephone numbers as referred to by Fla. Stat § 501.059(8)(A).

69.    Plaintiff Lucombe did not provide Defendant with his cellular telephone number at any time, nor did Plaintiff Lucombe give permission for Defendant to call his cell phone, or to use an artificial or prerecorded voice message to make calls to him.

70.    Plaintiff Lucombe did not have an established business relationship with Defendant during the time of the telephone solicitations from Defendant.

71.    Plaintiff Lucombe did not have a personal relationship with Defendant at any point in time.

72.    Plaintiff Lucombe did not give Defendant prior express invitation or consent in writing for Defendant to call Plaintiff Lucombe's cellular telephone for marketing or solicitation purposes or utilizing an artificial or pre-recorded voice.

73.    The phone calls Defendant placed to Plaintiff Lucombe initially consisting of pre-recorded voice messages with impersonal language, upon information and belief, was identical to calls made by Defendant through the same or similar call solicitation campaigns, to numerous other consumers.

74.    At all relevant times, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5), including the Do-Not Call provision in 47 C.F.R. § 64.1200(c).

CLASS ACTION COMPLAINT

75.    Defendant did not place the calls to Plaintiff for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A)(i).

76.    Each of the above unsolicited telephonic communications by Defendant and/or its agents violated 47 U.S.C. § 227(b)(1).

77.    Receiving Defendant's repeated unauthorized calls and pre-recorded voice messages drained Plaintiffs' phone batteries, consumed space on Plaintiffs' cell phones, and caused Plaintiffs additional electric expenses and wear and tear on their phones and batteries.

78.    The cumulative effect of unsolicited messages like Defendant's poses a real risk of ultimately rendering the phones unusable for other purposes as a result of the phones' memories being taken up.

79.    Plaintiffs were personally affected because they weere frustrated, distressed, disturbed, and felt harassed that Defendant and/or its agents continued to direct unsolicited and unauthorized phone calls and messages to their cell phones.

80.    Defendant's telephonic communications forced Plaintiffs to be deprived of the privacy and utility of their cell phone by forcing Plaintiffs to ignore or reject Defendant's disruptive calls, pre-recorded voice messages, dismiss alerts, and/or silence their cell phones as a result of Defendant's incessant unsolicited telephone calls.

81.    The TCPA was intended to give individuals control over how and where they receive telephonic communications.  When Defendant placed the calls to Plaintiffs without their consent, Defendant failed to address or respect the limitations imposed

CLASS ACTION COMPLAINT

by the TCPA. In doing so, Defendant invaded Plaintiffs' privacy and violated the spirit and intent behind the TCPA.

82.    Defendant's violations caused Plaintiffs to suffer real and concrete harm in the form of intrusion and distraction, wasted time, wasted cellular phone battery, loss of cellular phone use, and natural and foreseeable stress and frustration in connection with the foregoing, all of which the TCPA was designed to prevent. *See, e.g.*, *Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 U.S. Dist. LEXIS 84972, at *8 (N.D.W. Va. June 30, 2016) ("[S]uch calls also cause intangible injuries, regardless of whether the consumer has a prepaid cell phone or a plan with a limited number of minutes. The main types of intangible harm that unlawful calls cause are (1) invasion of privacy, (2) intrusion upon and occupation of the capacity of the consumer's cell phone, and (3) wasting the consumer's time or causing the risk of personal injury due to interruption and distraction.").

83.    Through the aforementioned conduct, Defendant repeatedly violated the TCPA, 47 U.S.C. §§ 227, et seq., numerous times.

84.    The CIPA was intended to give individuals control over how and where their confidential communications are collected and stored. When Defendant recorded and saved their phone calls with Defendant Moghadam, Defendant failed to address or respect the limitations of the CIPA. In doing so, Defendant violated Plaintiff Moghadam's privacy and the intentions of CIPA.

85.    Furthermore, the FTSA was intended to further enable Florida residents

to control how and where they receive telephonic communications. When Defendant used autodialing mechanisms to place unsolicited calls to Plaintiff Lucombe, Defendant failed to address or respect the limitations imposed by the FTSA. In doing so, Defendant invaded Plaintiff Lucombe's privacy and the intent behind the FTSA.

86.    All of the unsolicited telephone calls by Defendant and/or its agents violated 47 U.S.C. § 227(b)(1).

87.    Defendant's unsolicited phone messages caused Plaintiffs actual harm, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

88.    Defendant's phone messages also inconvenienced Plaintiffs and caused disruption to Plaintiffs' daily lives.

89.    Defendant's unsolicited phone messages caused Plaintiffs actual harm. Specifically, Plaintiffs estimate that they spent numerous hours investigating the unwanted phone messages including how they obtained Plaintiffs' numbers and who the Defendant was.

90.    Through the above-alleged conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA, CIPA and the FTSA.

### **STANDING**

### *The "Injury in Fact" Prong*

91.    Plaintiff's injury in fact must be both "concrete" and "particularized" in

CLASS ACTION COMPLAINT

order to satisfy the requirements of Article III of the Constitution, as articulated in *Spokeo*. *Spokeo*, 136 S.Ct. at 1547.

92.    For an injury to be "concrete" it must be a *de facto* injury, meaning that it actually exists.  *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). In this case, Defendant made numerous unsolicited telephone calls to Plaintiffs' cellular telephones, including calls utilizing an artificial or pre-recorded voice messages. Such phone calls are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and *de facto*.

93.    For an injury to be "particularized" means that the injury must "affect the Plaintiff in a personal and individual way." *Spokeo, Inc.*, 136 S.Ct. at 1543.  In this case, Defendant invaded Plaintiffs' privacy and peace by directing unsolicited telephone calls, including calls utilizing an artificial or pre-recorded voice, to Plaintiffs' cellular telephone. Furthermore, Plaintiffs were distracted, inconvenienced, and annoyed by having to take time to see who was calling, ignoring calls, and listening to Defendant's pre-recorded voice messages which consumed space in the voicemail box on Plaintiffs' cell phone. All of these injuries are particularized and specific to Plaintiffs, and will be the same injuries suffered by each member of the putative class.

### The "Traceable to the Conduct of Defendant" Prong

94.    The second prong required to establish standing at the pleadings phase is that Plaintiffs must allege facts to show that their injuries are traceable to the conduct

of Defendant.

95.    The above-mentioned unsolicited phone calls were directly and explicitly linked to Defendant. Defendant's calls identified the Defendant as "Alleviate Tax". These unsolicited telephone calls and pre-recorded voice messages are the source of Plaintiff's and the Class Members' injuries and directly traceable to Defendant. Thus, Plaintiffs have illustrated facts that show that his injuries are traceable to the conduct of Defendant.

### The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong

96.    The third prong to establish standing at the pleadings phase requires Plaintiffs to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

97.    In the present case, Plaintiffs' Request for Relief includes a request for injunctive relief and statutory damages for each phone call made by Defendant to cellular numbers who did not previously consent to receive calls and pre-recorded voice communications to their cellular phones from Defendant, as authorized by statute in 47 U.S.C. § 227.    The injunctive relief and statutory damages were created by Congress and specifically redress the damages suffered by Plaintiffs and the putative Class Members.

98.    Because all standing requirements of Article III of the U.S. Constitution have been met, Plaintiffs have standing to sue Defendant on the stated claims.

### CLASS ACTION ALLEGATIONS

99.    Both Plaintiffs brings this action pursuant to Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of the following Class (the "Class"), which is defined as follows:

The Federal TCPA DNC Class

All persons within the United States who received two phone calls within a 12-month period from Defendant to said person's telephone, and such person had previously included their name on the National Do Not Call Registry at least 31 days prior to receiving Defendant first call, within the four years prior to the filing of this Complaint.

100.    Plaintiff Lucombe brings this case on behalf of the class as defined as follows:

The Florida TCPA Class

All persons within the State of Florida who received any solicitation/telemarketing phone calls from Defendant using an automated system for the selection or dialing of telephone numbers to said person's cellular telephone and such person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint.

101.    Excluded from both Classes are Defendant, its officers and directors, members of its immediate families and its legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

102.    Plaintiffs reserve the right to redefine the Classes and to add subclasses as appropriate based on discovery and specific theories of liability.

103.    Further, Plaintiffs and members of the Classes were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its

CLASS ACTION COMPLAINT

agents, illegally contacted Plaintiffs and the Class Members via their telephones, whether cellular telephones or otherwise, for solicitation purposes, thereby invading the privacy of said Plaintiffs and the Class Members who opted out from any communication from Defendant, thereby causing annoyance to Plaintiffs and the Class and also invading the privacy of Plaintiffs and the Classes. Plaintiffs and the Class Members were damaged thereby.

104.  <u>Numerosity</u>: At this time, Plaintiffs do not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendant's conduct consisted of a standardized pre-recorded voice calls made to numerous telephone numbers. Plaintiffs believe, at a minimum, there are greater than forty (40) Class Members. Plaintiffs believe that the Classes are so numerous that joinder of all members of the Classes are impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

105.  Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to Defendant's phone call logs and call records.

106.  Members of the Classes may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail,

or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

107.   <u>Ascertainability</u>: The members of the Classes are ascertainable because the Classes are defined by reference to objective criteria. In addition, the members of the Classes are identifiable in that, upon information and belief, their cellular telephone numbers, names and addresses can be identified in business records maintained by Defendant and/or by third parties.

108.   <u>Typicality</u>: As a person who received numerous telephone solicitations from Defendants within a 12-month period, who did not have an established business relationship or personal relationship with Defendants, and who did not provide Defendants prior express invitation or permission to receive telephone solicitations, Plaintiff is asserting claims that are typical of the Classes.  Plaintiffs will fairly and adequately represent and protect the interests of the Classes in that Plaintiffs have no interests antagonistic to any member of the Classes.

109.   Plaintiffs and members of the Classes each received at least one telephonic sales call, advertising Defendant's services, without prior express written consent, which Defendant made or caused to be made to Plaintiffs and the members of the Classes.

110.   Plaintiffs' claims are typical of the claims of the members of the Classes. Plaintiffs have had to suffer the burden and invasion of privacy of receiving unsolicited phone calls to Plaintiffs' cellular telephones from Defendant while Defendant had no

CLASS ACTION COMPLAINT

express written consent to contact Plaintiffs. Thus, Plaintiffs' injuries are typical to Class Members.

111. Plaintiffs' claims, and the claims of the members of the Classes, originate from the same conduct, practice and procedure on the part of Defendant.

112. Plaintiffs' claims are based on the same theories, as are the claims of the members of the Classes.

113. Plaintiffs and Class Members were harmed by the acts of Defendant in at least the following ways: Defendant harassed Plaintiff and Class Members by illegally placing unsolicited calls, including calls utilizing artificial or prerecorded voice messages, to their cellular phones without prior express consent. Plaintiffs and the Class Members suffered injuries, including invasion of privacy, and were damaged thereby.

114. <u>Adequacy</u>: Plaintiffs are qualified to, and will fairly and adequately protect the interests of the members of the Classes with whom they is similarly situated, as demonstrated herein. Plaintiffs acknowledge that they have an obligation to make known to the Court any relationships, conflicts, or differences with any Class Member. Plaintiffs' interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Classes. Plaintiffs will vigorously pursue the claims of the members of the Classes. Plaintiff have retained counsel experienced and competent in class action litigation. Plaintiffs' attorneys, the proposed Class Counsel, are well-versed in the rules governing class action discovery, certification, and settlement. In

addition, the proposed class counsel is experienced in handling claims involving consumer actions and violations of the TCPA, CIPA and FTSA. Plaintiffs' counsel will assert, protect and otherwise represent the members of the Class. Plaintiffs have incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

115. <u>Predominance</u>: The questions of law and fact common to the members of the Classes predominate over questions that may affect individual members of the Class. The elements of the legal claims brought by Plaintiffs and Class Members are capable of proof at trial through evidence that is common to the Class rather than individual to its members.

116. <u>Commonality</u>: There are common questions of law and fact as to all members of the Classes, including but not limited to the following:

- What is Defendant's conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing phone calls;

- Whether Defendant initiated unsolicited phone calls, including calls utilizing an artificial or pre-recorded voice, to Plaintiffs and Class members;

- How Defendant obtained the numbers of Plaintiffs and Class members;

CLASS ACTION COMPLAINT

- Whether Defendant can meet its burden of showing that it had prior express written consent to conduct such phone calls;

- Whether Defendant willfully or knowingly violated the FTSA and its regulations;

- Whether Defendant willfully or knowingly violated the TCPA;

- Whether Defendant willfully or knowingly violated the CIPA;

- Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and

- Whether Plaintiffs and the members of the Classes are entitled to statutory damages, treble damages, and attorney fees and costs for Defendant's acts and conduct;

- Whether Plaintiffs and members of the Classes are entitled to a permanent injunction enjoining Defendant from continuing to engage in its unlawful conduct; and

- Whether Plaintiffs and the Classes are entitled to any other relief.

99.    Superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this matter because:

- If brought and prosecuted individually, the claims of the members of the Classes would require proof of the same material and substantive facts.

- The pursuit of separate actions by individual members of the

28

CLASS ACTION COMPLAINT

Classes would, as a practical matter, be dispositive of the interests of other members of the Classes, and could substantially impair or impede their ability to protect their interests.

- The pursuit of separate actions by individual members of the Classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

- These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Classes.

- The damages suffered by each individual member of the Classes may be relatively modest, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Classes to redress the wrongs done to them.

- Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.

- The pursuit of Plaintiffs' claims, and the claims of the members of the Classes, in one forum will achieve efficiency and promote judicial economy.

CLASS ACTION COMPLAINT

● There will be little difficulty in the management of this action as a class action.

100. <u>Class-Wide Injunctive Relief</u>: Moreover, class certification is warranted because Defendant has acted on grounds generally applicable to Plaintiffs and members of Classes, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole. Plaintiffs seek injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendant's ongoing violations of the TCPA, and to order Defendant to provide notice to them of their rights under the TCPA of statutory damages and to be free from unwanted phone calls.

101. Defendant has acted or refused to act on grounds generally applicable to the members of the Classes, making final declaratory or injunctive relief appropriate.

102. Plaintiffs and the members of the Classes have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Classes will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class Members' claims, few, if any, Class Members could afford to seek legal redress for the wrongs complained of herein.

103. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply

with applicable law. The interest of Class Members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

104. Plaintiffs and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful conduct.

105. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

## COUNT I

### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

### 47 U.S.C. §§ 227, ET SEQ.

### [ON BEHALF OF PLAINTIFFS AND THE TCPA DNC CLASS]

106. Plaintiffs re-allege and incorporate by reference each preceding paragraph as though fully set forth herein.

107. Defendant and/ or its agents placed unsolicited phone calls to Plaintiffs and the other members of the Class.

108. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of

court of a State bring in an appropriate court of that State.

    (A) An action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

    (B) An action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

    (C) Both such actions.

109.   Defendant – or third parties directed by Defendant dialed numbers to make non-emergency telephone calls to the telephones of Plaintiffs and the Class.

110.   Defendant's conduct was negligent, willful, or knowing.

111.   Defendant knew or should have known that it did not have prior express written consent to conduct these phone calls in violation of the TCPA.

112.   Defendant negligently, willfully, and/or knowingly allowed unsolicited phone calls to be made to Plaintiff and Class members. For instance, Defendant could have determined from a review of its own business records that it did not have the required prior express written consent to contact Plaintiff and/or Class members in such a manner yet disregarded such information and made the illegal and unwanted phone calls to Plaintiffs and the Class.

113.   The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227, *et seq.*

114.    Defendant has, therefore, violated 47 U.S.C. § 227(b)(1). As a result of Defendant's violations, Plaintiffs and each of the Class Members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and an award of $1,500.00 in statutory damages for each and every willing or knowing violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

115.    As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2), Plaintiffs, and the members of the Class, are entitled to damages in an amount to be proven at trial.

116.    Plaintiffs also seek an award of attorneys' fees and costs on behalf of Plaintiff and the Class.

## COUNT II

### VIOLATIONS OF THE CIPA, CAL. PEN. CODE § 632

### [ON BEHALF OF PLAINTIFF MOGHADAM]

117.    Plaintiff Moghadam re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

118.    Defendant – or third parties direct by Defendant – used equipment with the capacity to record and store a confidential communication without the consent of a party. This use of recording technology not only reflects a disregard for legal requirements but also an intentional breach of privacy norms established by law.

CLASS ACTION COMPLAINT

119. Defendant's conduct directly violates the purpose and intention of California's privacy laws, which are designed to protect individuals from unauthorized recordings of their private communications. As a business operating in California and engaging in telemarketing, Defendant is presumed to have superior knowledge and understanding of California's two- party consent laws, including Cal. Pen. Code § 632 and § 632.7.

120.  By knowingly recording Plaintiff Moghadam's communications without consent, Defendant's conduct undermines the principles of California's privacy statutes, which aim to safeguard personal privacy and ensure that all parties to a conversation have control over whether their communications are recorded. This disregard for statutory requirements not only harms Plaintiff but reflects Defendant's broader pattern of non-compliance.

121.  As a result of Defendant's violations of the CIPA, Plaintiff Moghadam is entitled to damages in the amount of $5,000 per violation in addition to any actual damages the court deems necessary. Cal. Pen. Code § 637.2(a).

## COUNT III

### VIOLATIONS OF THE FTSA, FLA. STAT. § 501.059

### [ON BEHALF OF PLAINTIFF LUCOMBE AND THE FTSA CLASS]

122.  Plaintiff Lucombe re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

CLASS ACTION COMPLAINT

123.   Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff Lucombe and the other members of the Class in violation of Fla. Stat **§ 501.059(8)(A).**

124.   Under Fla. Stat **§ 501.059(1)(G),** prior consent includes the signature of the called party, the telephone of the called party, as well as clear authorization to the person making or allowing the telephonic sales call to make the call.

125.   Defendant did not have prior express consent to call the cell phones of Plaintiff Lucombe and the other members of the putative Class when these telephonic sales calls were made. *Id.*

126.   Defendant has, therefore, violated Fla. Stat **§ 501.059(8)(A) AND** Fla. Stat **§ 501.059(1)(G)** by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff Lucombe and the other members of the putative Class without their prior express written consent.

127.   Defendant knew that it did not have prior express consent to make these calls, and knew or should have known that it was using equipment that constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

128.   As a result of Defendant conduct and pursuant to Fla. Stat **§ 501.059(10)(B)**, Plaintiff Lucombe and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

CLASS ACTION COMPLAINT

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, respectfully requests the following relief against Defendant:

- An order certifying this matter as a class action with Plaintiffs as Class Representatives, and designating Plaintiffs' counsel as Class Counsel;

- Injunctive relief prohibiting Defendant from engaging in such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A);

- Statutory damages of $500.00 for Plaintiffs and each member the TCPA DNC Class for each and every one of Defendant's violations of 47 U.S.C. §§ 227, et seq. pursuant to 47 U.S.C. § 227(b)(3)(B);

- Statutory damages of $1,500.00 for Plaintiffs and each member of the TCPA DNC Class for each and every one of Defendant's willful or knowing violations of 47 U.S.C. §§ 227, et seq. pursuant to 47 U.S.C. § 227(b)(3)(C);

- Statutory damages of $5,000 for Plaintiff Moghadam for each and every one of Defendant's willful and knowing violations of Cal. Pen. Code § 632;

- A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227 and Florida Statute § 501.059;

CLASS ACTION COMPLAINT

- Statutory damages of $500.000 for Plaintiff Lucombe and each member of the FTSA Class for each and every one of Defendant's willful or knowing violations of Fla. Stat § 501.059(8)(A);
- An award of attorneys' fees and costs to counsel for Plaintiff and the Class;
- Pre-judgment and post-judgment interest on monetary relief; and
- All other and further relief as the Court deems necessary, just, and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs, individually and on behalf of the Class, demands a jury trial on all issues so triable.


Dated: August 16, 2024                    Respectfully submitted,

                                          **KAZEROUNI LAW GROUP, APC**


                                    By:   ___*/s/Abbas Kazerounian*___
                                          Abbas Kazerounian, Esq.
                                          David J. McGlothlin, Esq.
                                          *Attorneys for Plaintiff*

CLASS ACTION COMPLAINT